JUDGE BUCHWALD

12 CIV 0043



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**ALFRED MORRIS, TERRELL GARDNER and ANDRE HENRY, Individually and on Behalf of All Others Similarly Situated,**

           **Plaintiffs,**

-against-

**LETTIRE CONSTRUCTION, CORP., LETTIRE BUILDERS, INC., LETTIRE 124TH STREET, LLC, URBAN BUILDERS COLLABORATIVE, LLC, NICHOLAS LETTIRE and GERARD LETTIRE, Jointly and Severally,**

           **Defendants.**

Civ. Action No. _____

**<u>CLASS & COLLECTIVE ACTION COMPLAINT</u>**

---

## <u>NATURE OF THE ACTION</u>

1.     Plaintiffs are labor foremen and general laborers for Defendants Lettire Construction Corp., Lettire Builders, Inc., Lettire 124th Street, LLC, and Urban Builders Collaborative, LLC (together, the "Corporate Defendants"), a common enterprise of general contracting companies responsible for the construction of large-scale affordable housing developments throughout New York City and the Tri-State Area. Plaintiffs bring this action to recover unpaid overtime wages owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), § 650 *et seq.*, and to recover unpaid prevailing wages owed to them as third-party beneficiaries of contracts entered into between Defendants and public entities including but not limited to the federal government. Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants, and their NYLL and prevailing wage claims on behalf of

themselves and a Rule 23 class of labor foremen, general laborers, and all other employees of Defendants with similar compensation structures.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5.      Plaintiff Alfred Morris ("Morris") was, at all relevant times, an adult individual residing in Kings County, New York.  Morris consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

6.      Plaintiff Terrell Gardner ("Gardner") was, at all relevant times, an adult individual residing in Kings County, New York.  Gardner consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

7.      Plaintiff Andre Henry ("Henry") was, at all relevant times, an adult individual residing in Kings County, New York.  Henry consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

2

8.      Upon information and belief, Defendant Lettire Construction Corp. is a New York corporation headquartered at 334 East 110th Street, New York, NY 10029.

9.      Upon information and belief, Defendant Lettire Builders, Inc. is a New York corporation headquartered at 334 East 110th Street, New York, NY 10029.

10.      Upon information and belief, Defendant Lettire 124th Street, LLC is a New York corporation headquartered at 334 East 110th Street, New York, NY 10029.

11.      Upon information and belief, Defendant Urban Builders Collaborative, LLC is a New York corporation headquartered at 334 East 110th Street, New York, NY 10029.

12.      Upon information and belief, Defendant Nicholas Lettire is an officer, director and/or managing agent of the Corporate Defendants, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and is jointly and severally liable with the Corporate Defendants.

13.      Upon information and belief, Defendant Gerard Lettire is an officer, director and/or managing agent of the Corporate Defendants, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and is jointly and severally liable with the Corporate Defendants.

3

## COLLECTIVE ACTION ALLEGATIONS

14.      Pursuant to 29 U.S.C. § 207 and § 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of labor foremen and general laborers who are or were employed by Defendants since January 4, 2009 and through the entry of judgment in this case (the "Collective Action Period"). This collective action is hereinafter referred to as the Collective Action.

15.      A collective action is appropriate in this circumstance because Plaintiffs and the members of the Collective Action are similarly situated in that they were all subjected to Defendants' illegal policy of failing to pay overtime. As a result of that policy, Plaintiffs and the members of the Collective Action did not receive legally required overtime premium payments for all hours worked in excess of forty (40) in a given week.

## CLASS ALLEGATIONS – NEW YORK LABOR LAW

16.      Pursuant to the NYLL, Plaintiffs bring their Second Cause of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of persons consisting of all labor foremen and general laborers who are or were employed by the Corporate Defendants at any time since January 4, 2006 through the entry of final judgment in this case (the "NYLL Class Period"). This class is hereinafter referred to as the NYLL Class.

17.      The persons in the NYLL Class identified above are so numerous that joinder of all members is impracticable.

18.      Although the precise number of such persons is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of the Defendants.

19.      Upon information and belief, there are well in excess of forty (40) members of

4

the NYLL Class during the NYLL Class Period.

20.     There are questions of law and fact common to the claims of Plaintiffs and the claims of the NYLL Class, including whether Defendants had a corporate policy of failing to pay overtime premiums when employees worked in excess of forty (40) hours in a given week.

21.     The claims of Plaintiffs are typical of the claims of the NYLL Class, and Plaintiffs will fairly and adequately represent the NYLL Class.  There are no conflicts between Plaintiffs and the members of the NYLL Class and Plaintiffs' counsel are experienced in handling class litigation.

22.     The Second Cause of Action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2).  Defendants have acted or refused to act on grounds generally applicable to the NYLL Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the NYLL Class as a whole.

23.     The Second Cause of Action is also properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the NYLL Class that predominate over any questions solely affecting individual members of the NYLL Class, including but not limited to:

    a.  whether each Defendant was an employer of the members of the NYLL Class within the meaning of the NYLL; and

    b.  whether Defendants had a policy of failing to pay overtime for all hours worked in excess of forty (40) per week.

24.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of this case where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against

5

corporate defendants. The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## CLASS ALLEGATIONS – PREVAILING WAGE

25.     Pursuant to NYLL § 220 and the New York common law of contract, unjust enrichment, and quantum meruit, Plaintiffs bring their Third through Fifth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of persons consisting of all labor foremen and general laborers who are or were formerly employed by the Corporate Defendants at any time since January 6, 2006 and through the entry of final judgment in this case (the "Prevailing Wage Class Period"). This class is hereinafter referred to as the Prevailing Wage Class.

26.     The persons in the Prevailing Wage Class identified above are so numerous that joinder of all members is impracticable.

27.     Although the precise number of such persons is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of the Defendants.

28.     Upon information and belief, there are in excess of forty (40) members of the Prevailing Wage Class during the Prevailing Wage Class Period.

29.     There are questions of law and fact common to the claims of Plaintiffs and the claims of the Prevailing Wage Class, including whether Defendants had a corporate policy of failing to pay the appropriate New York City prevailing wage rates and corresponding prevailing wage overtime rates, as required for projects that receive public financing.

30.     The claims of Plaintiffs are typical of the claims of the Prevailing Wage Class, and Plaintiffs will fairly and adequately represent the Prevailing Wage Class.  There are no conflicts between Plaintiffs and the members of the Prevailing Wage Class and Plaintiffs' counsel are experienced in handling class litigation.

31.     The Third through Fifth Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2).  Defendants have acted or refused to act on grounds generally applicable to the Prevailing Wage Class by failing to pay at the prevailing wage rates and becoming unjustly enriched, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Prevailing Wage Class as a whole.

32.     The Third through Fifth Causes of Action are also properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are also questions of law and fact common to the Prevailing Wage Class that predominate over any questions solely affecting individual members of the Prevailing Wage Class, including but not limited to:

a.  whether Defendants breached contracts with local, state, and/or federal governmental entities by failing to pay Plaintiffs and the members of the Prevailing Wage Class, who were third-party beneficiaries of such contracts, at New York City prevailing wage rates;

b.  whether Defendants failed and/or refused to pay Plaintiffs and the members of the Prevailing Wage Class overtime wages at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day;

c.  whether Defendants failed and/or refused to pay Plaintiffs and the members of the Prevailing Wage Class supplemental benefits on prevailing wage jobs as required

by the New York City prevailing wage schedules; and

d.  whether Defendants were unjustly enriched by failing to pay Plaintiffs and the Prevailing Wage Class at prevailing wage rates on prevailing wage jobs.

33.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of this case where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

34.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

35.    Upon information and belief, at all relevant times, the Corporate Defendants had gross revenues in excess of $500,000.00.

36.    At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each member of the Collective Action within the meaning of the FLSA, 29 U.S.C. § 203(d).

37.    At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each member of the NYLL Class and Prevailing Wage Class within the meaning of the NYLL, §§ 2 and 651.

38.    Based on information gathered from Defendant Lettire Construction Corp.'s

8

website (http://www.lettire.com/), Defendant Nicholas Lettire is the president and chief executive officer of the Corporate Defendants.

39.     Based on information gathered from Defendant Lettire Construction Corp.'s website (http://www.lettire.com/), Defendant Gerard Lettire is the chief operations officer and vice president of the Corporate Defendants.

40.     At all relevant times, Defendants have been in the business of building affordable housing developments, primarily in New York City.  According to Defendant Lettire Construction Corp.'s website (http://www.lettire.com/), it is the "premier builder of quality, sustainable affordable and special needs multi-family housing and mixed-use properties in the New York Tri-State area."

41.     Many of Defendants' affordable housing projects are partially funded by the federal government, including funding from the federal Tax Credit Assistance Program.  Upon information and belief, many of Defendants' projects also receive funding from state and/or local government.

42.     Upon information and belief, Defendants employ at least forty (40) employees at any one time.  Plaintiffs and a large number of Defendants' other employees have not received: (i) wages for all hours worked at the rates required in the New York City prevailing wage schedules; and (ii) overtime pay as required by the FLSA, the NYLL, and the New York City prevailing wage schedules.

43.     Plaintiff Morris was employed by Defendants as a labor foreman from approximately August 24, 2009 through November 30, 2011 (the "Morris Employment Period").

44.     Morris's job responsibilities included performing general labor and overseeing

9

8-10 general laborers. Morris reported to the site supervisor at each work site and to an assistant site supervisor on certain larger projects.

45.     During the Morris Employment Period, Morris typically worked six (6) days per week, for a total of between forty-five (45) and fifty-five (55) hours per week. Despite the fact that he regularly worked more than forty (40) hours in a given week, Morris was not paid at overtime rates for all hours worked beyond forty (40) between the beginning of his employment with Defendants and approximately April 2010.

46.     Throughout the Morris Employment Period, Morris was paid a rate of $20.00 per hour. Morris's rate of pay was less than the prevailing wage for laborers established by the New York City prevailing wage schedules, which were between $33.59 per hour and $38.20 per hour during the Prevailing Wage Class Period.

47.     As discussed above, Morris typically worked six (6) days per week, for a total of between forty-five (45) and fifty-five (55) hours per week. Despite the fact that he regularly worked more than forty (40) hours in a given week and more than eight (8) hours in a given day, Morris was not paid at the prevailing wage premium rates required by the New York City prevailing wage schedules for hours worked beyond forty (40) in one week or eight (8) in one day on prevailing wage projects.

48.     Most weeks during the Morris Employment Period, Morris worked on Saturdays, yet Morris did not receive time and one-half his regular rate for all Saturday hours worked, as required by the New York City prevailing wage schedules.

49.     During any weeks when Morris worked forty (40) or more hours, Morris was paid by check for the first forty (40) hours. For all hours worked beyond forty (40) in any given week, Morris received cash, which was inserted into the envelope in which he received

his weekly check.  The cash received by Morris compensated him for hours worked beyond forty (40) in one week at his "straight time" rate of $12.00 per hour, despite the fact that he was entitled to compensation at time and one-half his regular rate for all such hours.

50.    Throughout the Morris Employment Period, Defendants failed to pay Morris supplemental benefits required under the New York City prevailing wage schedules, which were between $18.69 per hour and $30.37 per hour during the Prevailing Wage Class Period, while working on prevailing wage jobs.

51.    Plaintiff Gardner was employed by Defendants as a general laborer from approximately January 7, 2010 through April 2011 (the "Gardner Employment Period").

52.    Gardner's job responsibilities included performing general labor.  Gardner reported to the labor foreman at each work site.  Gardner's labor foreman was usually Plaintiff Morris.

53.    During the Gardner Employment Period, Gardner typically worked six (6) days per week, for a total of between forty-five (45) and fifty-five (55) hours per week.  Despite the fact that he regularly worked more than forty (40) hours in a given week, Morris was not paid at overtime rates for all hours worked beyond forty (40) between the beginning of his employment with Defendants and approximately April 2010.

54.    Throughout the Gardner Employment Period, Gardner was paid a rate of $12.00 per hour.  Gardner's rate of pay was less than the prevailing wage for laborers established by the New York City prevailing wage schedules, which was between $33.59 per hour and $38.20 per hour during the Prevailing Wage Class Period.

55.    As discussed above, Gardner typically worked six (6) days per week, for a total of between forty-five (45) and fifty-five (55) hours per week.  Despite the fact that he regularly

worked more than forty (40) hours in a given week and more than eight (8) hours in a given day, Gardner was not paid at the prevailing wage premium rates required by and New York City prevailing wage schedules for hours worked beyond forty (40) in one week or eight (8) in one day on prevailing wage projects.

56.    Most weeks during the Gardner Employment Period, Gardner worked on Saturdays, yet Morris did not receive time and one-half his regular rate for all Saturday hours worked, as required by the New York City prevailing wage schedules.

57.    During any weeks when Gardner worked forty (40) or more hours, Gardner was paid by check for the first forty (40) hours.  For all hours worked beyond forty (40) in any given week, Gardner received cash, which was inserted into the envelope in which he received his weekly check.  The cash received by Gardner compensated him for hours worked beyond forty (40) in one week at his "straight time" rate of $12.00 per hour, despite the fact that he was entitled to compensation at time and one-half his regular hourly rate for all such hours.

58.    Throughout the Gardner Employment Period, Defendants failed to pay Gardner supplemental benefits required under the New York City prevailing wage schedules, which were between $18.69 per hour and $30.37 per hour during the Prevailing Wage Class Period, while working on prevailing wage jobs.

59.    Plaintiff Henry was employed by Defendants as a general laborer from approximately January 7, 2010 through May 2011 (the "Henry Employment Period").

60.    Henry's job responsibilities included performing general labor.  Henry reported to the labor foreman at each work site.  Henry's labor foreman was generally Plaintiff Morris.

61.    During the Henry Employment Period, Henry typically worked six (6) days per week, for a total of between forty-five (45) and fifty-five (55) hours per week.  Despite the fact

12

that he regularly worked more than forty (40) hours in a given week, Henry was not paid at overtime rates for all hours worked beyond forty (40) between the beginning of his employment with Defendants and approximately April 2010.

62.    Throughout the Henry Employment Period, Henry was paid a rate of $12.00 per hour.  Henry's rate of pay was less than the prevailing wage for laborers established by the New York City prevailing wage schedules, which was between $33.59 per hour and $38.20 per hour during the Prevailing Wage Class Period, while working on prevailing wage jobs.

63.    As discussed above, Henry typically worked six (6) days per week, for a total of between fifty (50) and sixty (60) hours per week.  Despite the fact that he regularly worked more than forty (40) hours in a given week and more than eight (8) hours in a given day, Henry was not paid at the prevailing wage premium rates required by and New York City prevailing wage schedules for hours worked beyond forty (40) in one week or eight (8) in one day on prevailing wage projects.

64.    Most weeks during the Henry Employment Period, Henry worked on Saturdays, yet Henry did not receive time and one-half his regular rate for all Saturday hours worked, as required by the New York City prevailing wage schedules.

65.    During any weeks when Henry worked forty (40) or more hours, Morris was paid by check for the first forty (40) hours.  For all hours worked beyond forty (40) in any given week, Henry received cash, which was inserted into the envelope in which he received his weekly check.  The cash received by Henry compensated him for hours worked beyond forty (40) in one week at his "straight time" rate of $12.00 per hour, despite the fact that he was entitled to compensation at legally mandated overtime rates for all such hours.

66.    Throughout the Henry Employment Period, Defendants failed to pay Henry

13

supplemental benefits required under the New York City prevailing wage schedules, which were between $18.69 per hour and $30.37 per hour during the Prevailing Wage Class Period

67.    Plaintiffs' work was performed in the normal course of the Defendants' business and was integrated into the business of Defendants.

68.    The work performed by Plaintiffs required little skill and no capital investment.

69.    The work performed by Plaintiffs did not require the exercise of independent business judgment.

70.    Defendants have simultaneously employed other individuals like Plaintiffs during the relevant time periods and continuing until today, to perform work as labor foremen and general laborers at Defendants' work sites.  As stated, the exact number of such individuals is presently unknown but within the sole knowledge of Defendants and can be ascertained through appropriate discovery, and is believed to be in excess of 40.

71.    Like Plaintiffs, Defendants' other employees were required to work for Defendants in excess of forty (40) hours per week, yet Defendants failed to pay Plaintiffs and their other employees overtime compensation for hours worked in excess of forty (40) hours per week.  This refusal to pay Plaintiffs and Defendants' other employees overtime compensation for hours worked in excess of forty (40) in a given week was a corporate policy of Defendants that applied to all of Defendants' other labor foremen and general laborers.

72.    In approximately April 2010, Defendants began paying overtime wages at the required rate of time and one-half the regular hourly rate for hours worked in excess of forty (40) per week.  Even when Defendants began paying overtime wages at the required rate in April 2010, Defendants continued to fail to pay Plaintiffs the prevailing wage rate and the corresponding prevailing wage overtime rates and supplemental benefits for work done on

14

prevailing wage jobs.

73.    Defendants entered into contracts with public entities, including but not limited to the federal government's Tax Credit Assistance Program, which obligated Defendants to pay Plaintiffs and members of the Prevailing Wage Class at or above the local prevailing wage rates, including any required supplementary benefits and overtime premiums for hours worked in excess of forty (40) per week or eight (8) hours per day and hours worked outside regular work hours.  Defendants' failure to pay Plaintiffs these prevailing wage rates, supplementary benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other labor foremen and general laborers.

74.    As employees of Defendants who were assigned to work on Defendants' publicly financed projects, Plaintiffs and the members of the Prevailing Wage Class were intended third-party beneficiaries of Defendants' public works contracts.

75.    Defendants failed to pay Plaintiffs and the members of the Prevailing Wage Class at the appropriate prevailing wage rates for their publicly financed contracts, yet upon information and belief, Defendants were compensated under these contracts as though they had paid the appropriate prevailing wage rates to Plaintiffs and the members of the Prevailing Wage Class.

76.    Even when Defendants began paying Plaintiffs and their other employees at overtime rates in April 2010, Defendants continued to fail to pay Plaintiffs and their other employees at the correct prevailing wage rates.

77.    Upon information and belief, throughout the Collective Action Period, NYLL Class Period and Prevailing Wage Class Period, and during the course of Plaintiffs' own employment, Defendants failed to maintain accurate and sufficient time records.

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT – FAILURE TO PAY OVERTIME

78.    Plaintiffs, on behalf of themselves and the members of the Collective Action (the "Collective Action Members"), repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.    As a result of Defendants' failure to compensate its employees, including Plaintiffs and the Collective Action Members, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a), for which Plaintiffs and the Collective Action Members are entitled to relief pursuant to 29 U.S.C. § 216(b).

80.    As a result of Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the members of the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

81.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

## SECOND CLAIM FOR RELIEF
## NEW YORK LABOR LAW – FAILURE TO PAY OVERTIME

82.    Plaintiffs, on behalf of themselves and the members of the NYLL Class (the "NYLL Class Members"), repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

16

83.     Defendants violated Plaintiffs' rights and the rights of the NYLL Class Members by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours (40) per week, in violation of the NYLL and its regulations.

84.     The Defendants' NYLL violations have caused Plaintiffs and the NYLL Class Members irreparable harm for which there is no adequate remedy at law.

85.     As a result of Defendants' failure to compensate its employees, including Plaintiffs and the NYLL Class Members, at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per week, Defendants have violated the NYLL, § 650 *et seq*., for which Plaintiffs and the NYLL Class Members are entitled to relief.

**THIRD CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

86.     Plaintiffs, on behalf of themselves and the members of the Prevailing Wage Class (the "Prevailing Wage Class Members"), repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

87.     Defendants' failure to pay Plaintiffs and the Prevailing Wage Class Members at the correct prevailing wage rates for straight time, overtime, and supplemental benefits on prevailing wage jobs constituted a material breach of the contracts entered into between Defendants and certain public entities.

88.     As a result of Defendants' failure to pay Plaintiffs and the Prevailing Wage Class Members at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York's common law of contract.

17

**FOURTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**

89.    Plaintiffs, on behalf of themselves and the Prevailing Wage Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

90.    Based on Defendants' failure to pay the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiffs and the Prevailing Wage Class Members.

91.    Equity and good conscience require that Defendants pay restitution to Plaintiffs and the Prevailing Wage Class Members.

92.    As a result of Defendants' failure to pay Plaintiffs and the Prevailing Wage Class Members at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiffs and the Prevailing Wage Class Members are entitled to relief from Defendants under New York's common law of unjust enrichment.

**FIFTH CLAIM FOR RELIEF**
**QUANTUM MERUIT**

93.    Plaintiffs, on behalf of themselves and the Prevailing Wage Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

94.    Plaintiffs and the Prevailing Wage Class Members provided valuable services to Defendants on prevailing wage jobs for which Plaintiffs and the Prevailing Wage Class Members expected compensation.  Defendants knowingly accepted such services yet failed to pay Plaintiffs and the Prevailing Wage Class Members the reasonable value of such services as defined by the New York City prevailing wage schedules.

18

95.    As a result of Defendants' failure to pay Plaintiffs and the Prevailing Wage Class Members the reasonable value of the valuable services they rendered, they are entitled to relief from Defendants under New York's common law of quantum meruit.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members, the NYLL Class Members, and the Prevailing Wage Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative members of the Collective Action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the NYLL Class Members, appointing Plaintiffs and their counsel to represent the NYLL Class, and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violations of New York state law;

c.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Prevailing Wage Class Members, appointing Plaintiffs and their counsel to represent the Prevailing Wage Class, and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants'

violation of New York state law;

d.   An order tolling the relevant statutes of limitations;

e.   An order declaring that Defendants violated the FLSA;

f.   An order declaring that Defendants' violations of the FLSA were willful;

g.   An order declaring that Defendants violated the NYLL;

h.   An award of overtime compensation due under the FLSA and NYLL;

i.   An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and the NYLL;

j.   An order declaring that Defendants are guilty of unjust enrichment and breach of contract under New York common law;

k.   An award of wages at the required prevailing wage rate, along with daily overtime premiums, weekend premiums, supplemental benefits and such other benefits required to be paid to Plaintiffs and the Prevailing Wage Class Members pursuant to Defendants' contracts with public entities;

l.   An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

m.   An award of prejudgment and post-judgment interest;

n.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.   Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 4, 2012

PELTON & ASSOCIATES PC

By: _____
Brent E. Pelton (BP 1055)
Attorney for Plaintiffs, Individually, and
on Behalf of All Other Persons Similarly Situated
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

21

December 20, 2011
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Lettire Construction and/or its owners, subsidiaries, corporate entities, corporate parents, contractors, managers, shareholders, officers and/or affiliates to pay me overtime wages and prevailing wages as required under state and/or federal law, and for making illegal wage deductions, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this class and collective action and agree to make decisions on behalf of other plaintiffs concerning the litigation, including the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____          _____
Signature              Date                              Printed Name

December 20, 2011
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Lettire Construction and/or its owners, subsidiaries, corporate entities, corporate parents, contractors, managers, shareholders, officers and/or affiliates to pay me overtime wages and prevailing wages as required under state and/or federal law, and for making illegal wage deductions, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this class and collective action and agree to make decisions on behalf of other plaintiffs concerning the litigation, including the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_Terrell Gardner_     _12-22-11_         _Terrell Gardner_
Signature             Date                 Printed Name

December 20, 2011
Page 7

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Lettire Construction and/or its owners, subsidiaries, corporate entities, corporate parents, contractors, managers, shareholders, officers and/or affiliates to pay me overtime wages and prevailing wages as required under state and/or federal law, and for making illegal wage deductions, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this class and collective action and agree to make decisions on behalf of other plaintiffs concerning the litigation, including the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____ 12/22/11
Signature              Date

_____
Printed Name