**PELTON & ASSOCIATES, PC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALFRED MORRIS, TERRELL GARDNER and ANDRE HENRY, Individually and on Behalf of All Others Similarly Situated,** | **ECF Case** |
| **Plaintiffs,** | **Civil Action No. 12-cv-0043 (NRB)** |
| **-against-** | |
| **LETTIRE CONSTRUCTION, CORP., LETTIRE BUILDERS, INC., LETTIRE 124TH STREET, LLC, URBAN BUILDERS COLLABORATIVE, LLC, NICHOLAS LETTIRE and GERARD LETTIRE, Jointly and Severally,** | |
| **Defendants.** | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A FAIR LABOR STANDARDS ACT COLLECTIVE ACTION AND AUTHORIZE NOTICE TO BE ISSUED TO ALL PERSONS SIMILARLY SITUATED

**TABLE OF CONTENTS**

**Page**

Table of Authorities ........................................................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 1

ARGUMENT .................................................................................................................................. 4

I.   CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION IS
     APPROPRIATE........................................................................................................................ 4

     A.   Conditional Certification Requires Only a Minimal Showing that Plaintiffs
          Are Similarly Situated to Other Employees............................................................... 5

     B.   All Lettire Constuction Laborers Are Similarly Situated ........................................ 6

II.  THE ISSUANCE OF A *HOFFMAN-LAROCHE* NOTICE IS APPROPRIATE ................ 7

     A.   The Proposed Notice Is Fair and Accurate ............................................................... 8

     B.   This Court Should Order Defendants to Produce the Limited Amount of
          Information Necessary to Ensure Timely and Effective Notice ............................. 10

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bolanos v. Norwegian Cruise Lines Ltd.*,
    212 F.R.D. 144 (S.D.N.Y. 2002) ................................................................................................5

*Braunstein v. Eastern Photographic Laboratories, Inc.*,
    600 F.2d 335 (2d Cir. 1979)..............................................................................................7, 8

*Cano v. Four M Food Corp.*,
    2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009).............................................................6

*Castillo v. P & R Enterprises, Inc.*,
    517 F. Supp. 2d 440 (D.D.C. 2007) ........................................................................................9

*Cook v. United States*,
    109 F.R.D. 81 (E.D.N.Y. 1985) ............................................................................................10

*Frank v. Capital Cities Communications, Inc.*,
    88 F.R.D. 674, 679 (S.D.N.Y. 1981) ......................................................................................8

*Garza v. Chicago Transit Authority*,
    2001 U.S. Dist. LEXIS 6132 (N.D. Ill. May 8, 2001) .............................................................9

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003).........................................................................5, 8, 10

*Hoffman v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) ............................................................................5, 8, 10

*Hoffman-LaRoche, Inc. v. Sperling*,
    493 U.S. 165 (1989)................................................................................................. *passim*

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007) ........................................................................................5, 6

*Iriarte v. Redwood Deli & Catering, Inc.*,
    2008 U.S. Dist. LEXIS 50072 (E.D.N.Y. June 30, 2008) ........................................................6

*Jacob v. Duane Reade, Inc.*,
    2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 27, 2012) ........................................................10

*Johnson v. American Airlines, Inc.*,
    531 F. Supp. 957 (N.D. Tex. 1982) ........................................................................................9

*Lujan v. Cabana Mgmt.*,
     2011 U.S. Dist. LEXIS 9542 (E.D.N.Y. Feb. 1, 2011)................................................................6

*Myers v. Hertz Corp.*,
     624 F.3d 537 (2d Cir. 2010)............................................................................................5

*Patton v. Thomson Corp.*,
     364 F. Supp. 2d 263 (E.D.N.Y. 2005) ...........................................................................5, 6

*Pippins v. KPMG LLP*,
     2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012) ...................................................... 10

*Raniere v. Citigroup Inc.*,
     _ F. Supp. 2d _, _, 2011 U.S. Dist. LEXIS 135393 (S.D.N.Y. Nov. 22, 2011) ........................... 10

*Ravenell v. Avis Budget Car Rental, LLC*,
     2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July 19, 2010) ..............................................7

*Romero v. Producers Dairy Foods, Inc.*,
     235 F.R.D. 474, 492-93 (E.D.Cal. 2006)..................................................................9

*Shain v. Armour & Co.*,
     40 F. Supp. 488 (W.D. Ky. 1941).............................................................................4

*Shariar v. Smith & Wollensky*,
     659 F.3d 234, 243-44 (2d Cir. 2011) .......................................................................4

*Sherrill v. Sutherland Global Servs. Inc.*,
     487 F. Supp. 2d 344 (W.D.N.Y. 2007) .....................................................................8

*Soler v. G & U, Inc.*,
     86 F.R.D. 524 (S.D.N.Y. 1980) .................................................................................9

*Summa v. Hofstra Univ.*,
     715 F. Supp. 2d 378 (E.D.N.Y. 2010) ......................................................................7

*Trinidad v. Breakaway Courier Systems, Inc.*,
     2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) .............................................................8

*Veliz v. Cintas Corp.*,
     2007 U.S. Dist. LEXIS 24428 (N.D. Cal. Mar. 20, 2007).........................................9

*Wraga v. Marble Lite, Inc.*,
    2006 U.S. Dist. LEXIS 60457 (E.D.N.Y. Aug. 22, 2006)......................................................5, 6

*Zhao v. Benihana, Inc.*,
    2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001)............................................................6

*Zheng Fang v. Yongjing Zhuang*,
    2010 U.S. Dist. LEXIS 133618 (E.D.N.Y. Dec. 2010) ............................................................6

*Zivali v. AT&T Mobility LLC*,
    646 F. Supp. 2d 658, 661 (S.D.N.Y. 2009)................................................................................5


**STATUTES, RULES, AND REGULATIONS**

29 U.S.C.
    § 215(a)(3) ..................................................................................................................................8
    § 216(b)............................................................................................................................ *passim*
    § 256(b)......................................................................................................................................10

Federal Rules of Civil Procedure
    Rule 23 .......................................................................................................................................6

## PRELIMINARY STATEMENT

Named Plaintiffs Alfred Morris, Terrell Gardner, and Andre Henry (collectively, the "Plaintiffs" or the "Named Plaintiffs") seek conditional certification of this action as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Plaintiffs seek conditional certification on behalf of themselves and all other similarly situated current and former labor foreman and general laborers ("Laborers") employed by Lettire Construction Corp., Lettire Builders, Inc., Lettire 124th Street, LLC, Urban Builders Collaborative, LLC (together, "Lettire Construction" or the "Corporate Defendants"), Nicholas Lettire ("N. Lettire") and Gerard Lettire ("G. Lettire" and, together with the Corporate Defendants, the "Defendants") between January 4, 2009 and the entry of judgment in this case (the "Collective Action Members").  Accordingly, Plaintiffs hereby respectfully submit this Memorandum of Law in Support of their Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to be Issued to the Class.

## STATEMENT OF FACTS

This action commenced with Plaintiffs' Class & Collective Action Complaint (the "Complaint") on January 4, 2012.[1]  Defendants filed an Answer on March 5, 2012.[2]  Plaintiffs are former Laborers employed by Defendants to provide general construction labor.  Defendants own and operate an enterprise of general contracting companies responsible for the construction of large-scale affordable housing developments throughout New York City and the Tri-State area.  Many of Defendants' affordable housing projects are partially funded by the federal government and also state and/or local government.

---

[1] *See* Pelton Decl. Ex. A.

[2] *See* Pelton Decl. Ex. B.

In the Complaint, Plaintiffs allege that Defendants violated their FLSA rights and the FLSA rights of all other labor foreman and general laborers employed by Defendants by:

> Requiring Plaintiffs to consistently work more than forty (40) hours per week but refusing to pay Plaintiffs at the required overtime rate of time and one-half their regular hourly rate for all hours worked beyond forty (40) per week.[3]

**Plaintiffs' Job Responsibilities**

Labor foreman and general laborers were primarily responsible for providing construction labor on Defendants' affordable housing development projects.[4]  Throughout their employment with Defendants, Plaintiffs performed construction work on  various projects, including: the Tapestry Project, the Via Verde Project, the Dumount Project and Project Renewal. [5]

Throughout the Collective Action Period, all Plaintiffs were typically required to work five (5) or six (6) days per week, between eight (8) and ten (10) hours per day, for a total of at least forty-five (45) to fifty-five (55) hours per week.[6]  Depending on the project on which Plaintiffs were working, Plaintiffs would have to stay until at least 5:00pm each day, despite the fact that their scheduled shift ended at 3:30pm.[7]  At times, Plaintiffs were also required to work until as late as 7:00pm to complete their work for the day.[8]

---

[3] *See* Pelton Decl. Ex. A; Ex. C, ¶¶ 4, 5, 6; Ex. D, ¶¶ 4, 5, 6; Ex. E, ¶¶ 4, 5, 6.

[4] *See* Pelton Decl. Ex. C, ¶ 2; Ex. D, ¶ 2; Ex. E, ¶ 2.

[5] *See* Pelton Decl. Ex. C, ¶ 3; Ex. D, ¶ 3; Ex. E, ¶ 3.

[6] *See* Pelton Decl. Ex. C, ¶ 4; Ex. D, ¶ 4; Ex. E, ¶ 4.

[7] *Id.*

[8] *Id*.

**Defendants' Method of Compensating Plaintiffs**

In their declarations, Plaintiffs uniformly report that although they regularly worked between at least forty-five (45) and fifty-five (55) hours per week during their employment with Defendants, they did not receive overtime premiums for hours worked in excess of forty (40) until Defendants' changed their policy to begin paying overtime premiums in or around April 2010.[9]  Prior to April 2010 however, Plaintiffs were paid by check for their first forty (40) hours of work and in cash for all hours over forty (40) in a week, with all hours worked paid at the same hourly rate.[10]  Plaintiffs were paid these wages in an envelope each week.[11]  Plaintiffs were paid in the same manner each week without regard to the project on which they were working.[12]

**Compensation Structure of Other Laborers**

Plaintiffs are aware based on conversations with their colleagues and through witnessing other Laborers receive their wages that other Laborers employed by Defendants were paid in exactly the same way Defendants paid Plaintiffs – all hours worked were paid at straight-time rates.[13]  While most of the Laborers received their wages by a combination of check and cash, there were certain employees who were paid entirely in cash.[14]  These Laborers who were paid entirely in cash also did not receive overtime premiums for hours worked in excess of forty (40)

---

[9] *See* Pelton Decl. Ex. C, ¶¶ 5, 6; Ex. D, ¶¶ 5, 6; Ex. E, ¶¶ 5, 6.

[10] *See* Pelton Decl. Ex. C, ¶ 6; Ex. D, ¶ 6; Ex. E, ¶ 6.

[11] *Id.*

[12] *See* Pelton Decl. Ex. C, ¶¶ 5, 6; Ex. D, ¶¶ 5, 6; Ex. E, ¶¶ 5, 6.

[13] *See* Pelton Decl. Ex. C, ¶¶ 7, 8; Ex. D, ¶¶ 7, 8; Ex. E, ¶¶ 7, 8.

[14] *See* Pelton Decl. Ex. C, ¶ 6; Ex. D, ¶ 6; Ex. E, ¶ 6.

in a week.[15]   This failure to pay overtime premiums to Laborers was a corporate policy of

Defendants that applied to all Defendants' Laborers and was in effect until approximately April

2010.[16]

**Defendants' Awareness of, and Failure to Remedy, The Illegal Pay Practices**

Throughout the period leading up to the instant lawsuit, Defendants refused to address the

issue of unpaid overtime.   Plaintiffs state that Defendants' managerial employees, including

"Rocco," John Orsino, Gerard Lettire and Nicholas Lettire were aware that Plaintiffs worked

more than forty (40) hours per week but received no overtime.[17]   Plaintiffs who complained

about not receiving overtime premiums for hours worked in excess of forty (40) in a week were

either ignored or told that Lettire does not pay overtime.[18]

## ARGUMENT

**I.      CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION IS
         APPROPRIATE**

The FLSA's "collective action" provision allows one or more employees to bring an

action for overtime compensation on behalf of themselves and other employees who are

"similarly situated."   29 U.S.C. § 216(b); *Shariar v. Smith & Wollensky*, 659 F.3d 234, 243-44

(2d Cir. 2011).   "The evident purpose of the [FLSA] is to provide one lawsuit in which the

claims of different employees, different in amount but all arising out of the same character of

employment, can be presented and adjudicated, regardless of the fact that they are separate and

independent of each other."   *Shain v. Armour & Co.*, 40 F. Supp. 488, 490 (W.D. Ky. 1941).

---

[15] *Id*.

[16] *See* Pelton Decl. Ex. C, ¶ 7; Ex. D, ¶ 7; and Ex. E, ¶ 7.

[17] *Id.*

[18] *See* Pelton Decl. Ex. C, ¶ 9; Ex. D, ¶ 9; and Ex. E, ¶ 9.

These collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact."  *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Here, Plaintiffs seek to bring their case on behalf of all Laborers employed by Lettire during the Collective Action Period, as that term is defined in the Complaint.[19]

### A.    Conditional Certification Requires Only a Minimal Showing that Plaintiffs Are Similarly Situated to Other Employees

The standard for conditionally certifying a FLSA collective action and authorizing notice to potential opt-in plaintiffs – that the named plaintiffs and the potential opt-in plaintiffs be 'similarly situated' – is "not a stringent one."  *Wraga v. Marble Lite, Inc.*, 2006 U.S. Dist. LEXIS 60457, at *3 (E.D.N.Y. Aug. 22, 2006) (citing *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 266-67 (E.D.N.Y. 2005); *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 661 (S.D.N.Y. 2009).  There need only be a "modest factual showing sufficient to demonstrate … a common policy or plan that violated the law."  *Sbarro*, 928 F. Supp. at 261; *see also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003).

Plaintiffs employed at one facility by a company with multiple facilities may establish that employees at all such facilities are similarly situated.  *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007); *see also Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002) (certifying class of employees working on different ships owned by one cruise company, where named plaintiffs did not work on all ships, under Rule 23's more stringent standards).

---

[19] *See* Pelton Decl. Ex. A, ¶ 14.

The standard for conditionally certifying an FLSA collective action is considerably easier to meet than the standard required by Fed. R. Civ. P. 23 for class certification. *Myers v. Hertz Corp.*, 624 F.3d 537, 556 (2d Cir. 2010); *Lujan v. Cabana Mgmt.*, 2011 U.S. Dist. LEXIS 9542, at *13 (E.D.N.Y. Feb. 1, 2011) (quoting *Cano v. Four M Food Corp.*, 2009 U.S. Dist. LEXIS 7780, at *4 (E.D.N.Y. Feb. 3, 2009)).   Pursuant to the very lenient conditional certification standard, the Rule 23(a) and (b)(3) requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority are all inapplicable in the FLSA context. *Iglesias-Mendoza*, 239 F.R.D. at 368.   This distinction "makes sense," since "[t]he FLSA's opt-in provision simply provides an opportunity for potential plaintiffs to join the action but does not bind those who do not; by contrast, the 'opt-out' regime under Rule 23 does bind absent class members who nevertheless are deemed to have had adequate opportunities to participate in the action brought on their behalf." *Patton*, 364 F. Supp. 2d at 267.

## B.    All Lettire Construction Laborers Are Similarly Situated

The amount of evidence plaintiffs must put forward to prevail in the 'similarly situated' inquiry is minimal.  "[S]tatements setting forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other co-workers who were allegedly subject to the same denial of overtime pay" are more than enough to warrant FLSA conditional certification. *Cano*, 2009 U.S. Dist. LEXIS 7780, at *17; *see also Zheng Fang v. Yongjing Zhuang*, 2010 U.S. Dist. LEXIS 133618, at *7-8 (E.D.N.Y. Dec. 2010) (one affidavit sufficient); *Iriarte v. Redwood Deli & Catering, Inc.*, 2008 U.S. Dist. LEXIS 50072, at *9 (E.D.N.Y. June 30, 2008) (same); *Wraga*, 2006 U.S. Dist. LEXIS 60457, at *5-6 (several affidavits sufficient); *Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678, at *12 (S.D.N.Y. May 7, 2001) (one affidavit based on plaintiff's "best knowledge" sufficient).

Here, Plaintiffs' affidavits along with the pleadings on the record present more than enough evidence to satisfy Plaintiffs' evidentiary burden.  As demonstrated more fully in the Statement of Facts above, the facts in this case fit neatly with the contours of the well-settled 'similarly situated' inquiry.  All Plaintiffs and potential Collective Action Members were Laborers with the responsibility of performing general labor on Defendants' construction sites. All were typically required to work more than 40 hours per week, and all received compensation at their regular hourly rate, instead of overtime premiums, for hours worked in excess of 40 per week.  Any slight variations in their job duties and/or wage rates does not change the fact that Plaintiffs and the Collective Action Members were all paid by Defendants pursuant to the same unlawful policy. *See, e.g., Ravenell v. Avis Budget Car Rental, LLC*, 2010 U.S. Dist. LEXIS 72563, at *11-12 (E.D.N.Y. July 19, 2010) (conditionally certifying a nationwide class by identifying evidence of a common compensation policy).

The claims of Plaintiffs and the potential Collective Action Members for unpaid overtime rely on the same legal theories, and any defenses to their claims would be common to all Collective Action Members.  All are also similarly affected by the question of whether Defendants' violations were "willful" as that term is defined in the FLSA.

In light of the extensive similarities between Plaintiffs and the potential Collective Action Members, and the lenient 'similarly situated' inquiry, conditional certification is appropriate at this time.

## II.     THE ISSUANCE OF A *HOFFMAN-LAROCHE* NOTICE IS APPROPRIATE

The U.S. Supreme Court has endorsed the practice of issuing notice to inform potential opt-in plaintiffs of a pending collective action, and indeed issuance of such notice is now standard practice.  *Hoffman-LaRoche*, 493 U.S. at 170.  Notice serves the goals of "avoiding a

multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action," and prevents the possibility of "misleading communications" from the parties to potential opt-in plaintiffs. *Id*. at 171-72; *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 335-36 (2d Cir. 1979); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010). Indeed, once a collective action is conditionally certified, it depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*. at 170.

It is well established that district courts may authorize notice to potential opt-in plaintiffs. *See, e.g., Braunstein*, 600 F.2d 335, 335-36 (2d Cir. 1979); *Trinidad v. Breakaway Courier Systems, Inc.*, 2007 U.S. Dist. LEXIS 2914, at *11 (S.D.N.Y. Jan. 12, 2007); *Sbarro*, 982 F. Supp. at 261 (citing *Hoffman-La Roche*); *Gjurovich*, 282 F. Supp. 2d at 104.

## A.     The Proposed Notice Is Fair and Accurate

Plaintiffs' proposal for court-approved notice is "timely, accurate, and informative." *Hoffman-LaRoche*, 493 U.S. at 172. It provides notice of the pendency of the action and of the opportunity to opt-in. Plaintiffs' legal claims are accurately described. Potential opt-ins are advised that Defendant will defend against the claims and that they are not required to participate. The notice provides clear instructions on how to opt in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. *See* 29 U.S.C. § 215(a)(3).

This Court should order that notice be provided through two means. First, as an efficient way to reach all Collective Action Members currently employed by Defendants, the Court should order Defendants to post notice of the collective action and consent forms in each workplace where potential Collective Action Members are employed. Courts in this Circuit and around the

country have recognized posting as an efficient, non-burdensome method of notice. *See Sherrill v. Sutherland Global Servs. Inc.,* 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) (allowing notice to be posted at defendant's places of business for 90 days and mailed to all class members); *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674, 679 (S.D.N.Y. 1981) (requiring defendant to "permit the posting of copies of public bulletin boards at FP offices"); *Soler v. G & U, Inc.,* 86 F.R.D. 524, 531-32 (S.D.N.Y. 1980) (authorizing plaintiffs to "post and mail the proposed Notice of Pendency of Action and Consent to Sue forms"); *Castillo*, 517 F. Supp. 2d 440, 449 (D.D.C. 2007) (ordering notice posted in "(1) Defendant's offices, or (2) office spaces designated for Defendant's use in third-party buildings"); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D.Cal. 2006) (finding that posting of notice in workplace and mailing is appropriate and not punitive); *Veliz v. Cintas Corp.*, 2007 U.S. Dist. LEXIS 24428, at *5 (N.D. Cal. Mar. 20, 2007) (citing Court order to post notice in all workplaces where similarly situated persons are employed); *Garza v. Chicago Transit Authority*, 2001 U.S. Dist. LEXIS 6132, at *10 (N.D. Ill. May 8, 2001) (ordering defendant to post notice in all its terminals); *Johnson v. American Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (finding that sending notice by mail, "posting on company bulletin boards at flight bases and publishing the notice without comment in American's The Flight Deck, are both reasonable and in accordance with prior authority").

Here, conspicuously posting notice and consent forms at Defendants' job sites and work facilities will effectively inform all labor foreman and general laborers about the putative collective action. If the notice is posted conspicuously, the goal of ensuring that all *currently employed* labor foreman and general laborers are aware of the lawsuit could be achieved.

Posting notice will help rectify any difficulties reaching potential collective action members through sending notice, the second form of notice Plaintiffs propose.

Plaintiffs propose that notice and consent forms be mailed by first class mail and electronic mail to potential opt-in plaintiffs' last known addresses. *See*, *e.g.*, *Jacob v. Duane Reade, Inc.*, 2012 U.S. Dist. LEXIS 11053, at *29 (S.D.N.Y. Jan. 27, 2012); *Pippins v. KPMG LLP*, 2012 U.S. Dist. LEXIS 949, at *41 (S.D.N.Y. Jan. 3, 2012) (recognizing the need for discovery of email addresses, "given the reality of communications today"); *Raniere v. Citigroup Inc.*, _ F. Supp. 2d _, _, 2011 U.S. Dist. LEXIS 135393, at *87-88 (S.D.N.Y. Nov. 22, 2011).   Those members interested in participating would be required to file their consents with Plaintiffs' counsel within 90 days of receiving the form.   This is consistent with established practice under the FLSA. *Hoffman-LaRoche*, 493 U.S. at 172; *Gjurovich*, 282 F. Supp.2d at 106-109 (court provides an exhaustive list of specific notice requirements).   Sending notice and consent forms to opt-in plaintiffs is standard operating procedure in this Circuit and throughout the country, and Plaintiffs respectfully request that this Court authorize it.

**B.      This Court Should Order Defendants to Produce the Limited Amount of Information Necessary to Ensure Timely and Effective Notice**

Since only Defendants know the names, addresses, phone numbers, and personal email addresses of potential Collective Action Members, early exchange of a mailing list for potential opt-ins is a routine component of notice in collective actions.   *Hoffman-LaRoche*, 493 U.S. at 170 (the "District Court was correct to permit discovery of names and addresses …"); *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("[c]ertainly, it is 'unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion'").   Expediting this limited information exchange is particularly important because the FLSA's

statute of limitations may not be tolled for particular plaintiffs until they file their "Consent to Sue" forms.  29 U.S.C. § 256(b); *Sbarro*, 982 F. Supp. at 262.

Plaintiffs are not requesting unusual or extraordinary relief.  Plaintiffs' request is limited to information clearly within the discretion of this Court to order.  Plaintiffs respectfully request that this Court order Defendants to provide the information listed above in both paper and digital format, to expedite the posting and mailing of notice.

## CONCLUSION

As explained more fully above, there is strong evidence, even at this early stage of the case, that Plaintiffs and the potential Collective Action Members are 'similarly situated' as that term is defined by the FLSA.  Plaintiffs and the potential Collective Action Members all regularly worked more than forty (40) hours per week, and were paid at their regular rate for all hours worked instead of overtime premiums for hours worked in excess of forty (40) in a week.

Therefore, Plaintiffs respectfully request that this Court issue an order that: (i) allows this case to proceed as a collective action; (ii) requires Defendants to post notice at Defendants' job sites and work facilities and authorizes Plaintiffs to send notice to all potential Collective Action Members by first class mail and electronic mail; (iii) directs Defendants to produce to Plaintiffs the last known mailing addresses and electronic mail addresses for all current and former Sales Associates; and (iv) allows Plaintiffs to mail a letter to the potential Collective Action Members reminding them of the deadline to opt-in to the action.

Dated: New York, New York
　　　　May 18, 2012

　　　　　　　　　　　　　　　　　　PELTON & ASSOCIATES, PC


　　　　　　　　　　　　　　　　　　By: ___/s/ Brent Pelton_____
　　　　　　　　　　　　　　　　　　Brent E. Pelton (BP 1055)

        Taylor B. Graham (TG 9607)
        *Attorneys for Plaintiffs, Individually, and*
        *on Behalf of All Other Persons Similarly Situated*
        111 Broadway, Suite 901
        New York, New York 10006
        Telephone: (212) 385-9700
        Facsimile: (212) 385-0800